**FOR PUBLICATION**

```
        IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
             DIVISION OF ST. THOMAS & ST. JOHN
```

```
UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
     v.                         )    Civil No. 2005-71
                                )
TWENTY THOUSAND THREE HUNDRED   )
AND NINETY TWO DOLLARS IN       )
UNITED STATES CURRENCY          )
($20,392.00), MORE OR LESS,     )
                                )
          Defendant.            )
_____)
```

**ATTORNEYS:**

**Jocelyn Hewlitt, AUSA**
St. Thomas, U.S.V.I.
    *For the plaintiff.*

**Thurston T. McKelvin, FPD**
St. Thomas, U.S.V.I.
    *For the defendant.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the plaintiff, United States of America (the "Government"), for summary judgment against the defendant property, Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency ($20,392.00), more or less (the "Defendant Property").

**I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

The Government brought this one-count action in April, 2005, to forfeit and condemn to its use and benefit the Defendant

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 2

Property for violations of 18 U.S.C. § 1960(a)(b)(1)(B).[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345 and 28 U.S.C. 1355.

According to the Government's verified complaint, the Defendant Property was seized on December 9, 2004, from the cruise ship cabin of Chuchi Kue (the "Claimant") aboard the M/V Dawn Princess (the "Dawn Princess") in St. Thomas, U.S. Virgin Islands. Attached to the complaint is the affidavit of an Immigration and Customs Enforcement special agent. That affidavit states that the Dawn Princess arrived in St. Thomas on December 9, 2004, from Montego Bay, Jamaica, and that U.S. Customs and Border Protection ("CBP") officers thereafter

---

[1] 18 U.S.C. § 1960(a) provides, in pertinent part:

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section--
    (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and--
    . . . .
        (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section.

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 3

conducted a random search of the vessel, including the Claimant's cabin. During the search, the CBP officers discovered various documents and effects belonging to the Claimant, including the Defendant Property. After waiving her *Miranda* rights, the Claimant was questioned, stating that she received payments from crew members of the Dawn Princess and other cruise ships in exchange for sending money from various locations in the United States to the Philippines. The Claimant was subsequently taken into custody.

On December 30, 2004, the Claimant was charged in a six-count indictment. The Claimant later pled guilty to Count I of the indictment, which charged her with knowingly conducting, controlling, managing, directing or owning all or part of an unlicensed money transmitting business, which affected foreign commerce, without complying with the registration requirements of 31 U.S.C. § 5330, in violation of 18 U.S.C. §§ 371 and 1960(a)(b)(1)(B). Consequently, the Government brought this action for forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), alleging that the Defendant Property constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, and requesting that the Court issue a warrant and summons for the arrest and seizure of the Defendant Property.

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 4

    The Government now moves for summary judgment on its forfeiture claim. The Claimant, as a person claiming to have an interest in the Defendant Property, has filed an opposition.[2]

## II. DISCUSSION

**A. Summary Judgment Standard**

    Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

    The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] The Government does not dispute that the Claimant has an interest in the Defendant Property.

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 5

U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

**B.   Civil Asset Forfeiture Reform Act**

On April 25, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106-185, 114 Stat. 202, to address concerns associated with federal civil forfeitures. Since the Government commenced this action after August 23, 2000, the date on which CAFRA became effective, CAFRA applies to this case. *See United States v. One "piper" Aztec "f" De Luxe Model 250 Pa 23 Aircraft*, 321 F.3d 355, 358 (3d Cir. 2003) (citations omitted).

Under CAFRA, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *see also One "piper" Aztec*, 321 F.3d at 357.[3] "The burden of showing

---

[3] Before the enactment of CAFRA, the Government could meet its initial forfeiture burden by showing probable cause. *See*, *e.g.*, *United States v. 734,578.82 in United States Currency*, 286

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 6

something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" *United States v. Real Prop. in Section 9, Town 29 N., Range 1 W.*, 308 F. Supp. 2d 791, 806 (E.D. Mich. 2004) (quoting *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993)). "If the Government's theory of forfeiture is that the property . . . was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

"Once the Government has met its burden, the burden then shifts to the claimant to prove by a preponderance of evidence a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture." *United States v. $52,000.00, More or Less, in United States Currency*, 508 F. Supp. 2d 1036,

---

F.3d 641, 648 (3d Cir. 2002) (quoting *United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289 (7th Cir. 1990)). CAFRA's preponderance-of-the-evidence standard thus imposes a higher burden of proof on the Government. *See United States v. $21,510 in United States Currency*, 292 F. Supp. 2d 318, 321 n.2 (D.P.R. 2003).

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 7

1040 (D. Ala. 2007) (citing 18 U.S.C. § 983(d)(1); *United States v. $21,000.00 in United States Postal Money Orders*, 298 F. Supp. 2d 597, 601 (E.D. Mich. 2003)); *see also United States v. Six Negotiable Checks*, 207 F. Supp. 2d 677, 683 (E.D. Mich. 2002) (citing *United States v. One Parcel of Property Located at 2526 Faxon Ave.*, 145 F. Supp. 2d 950 (W.D. Tenn. 2001)).

### III. ANALYSIS

To meet its burden for summary judgment in this matter, the Government must prove that it is more probably true than not true that (1) the Claimant was operating an illegal money transmitting business, and (2) there is a substantial connection between the Defendant Property and her criminal offense. *See United States v. 47 10-Ounce Gold Bars, 35 1-Ounce Gold Coins, & 3,069 1-Ounce Silver Coins*, Civ. No. 03-955, 2005 U.S. Dist. LEXIS 2906 (D. Or. Jan. 28, 2005).

Most material facts in this matter are undisputed. Those facts show that the Claimant's cabin aboard the Dawn Princess was searched by CBP officers, who found notebooks with names and currency figures next to the names, e-mail documents, wire transfer documents, including remitter slips from various financial institutions showing the transfer of large sums of money. The CBP officers also seized the Defendant Property from among those documents and effects in the Claimant's cabin. The

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 8

Claimant was thereafter taken into custody and questioned. The Claimant stated that she had bank accounts in Alaska, Florida, St. Thomas, and the Philippines, and that she operated a licensed money transmitting business in the Philippines. The Claimant used her St. Thomas bank account as a depository for funds that she illegally transmitted to the Philippines from the Virgin Islands. The undisputed material facts further show that the Financial Crimes Enforcement Network conducted a search of official records and determined that the Claimant was not registered in the United States as a money services business. It is also undisputed that the Claimant thereafter pled guilty to Count I of a December 4, 2004, indictment, charging with six counts of violations of 18 U.S.C. § 1960(a)(b)(1)(B), for operating an unlicensed money transmitting business.

With respect to the first element of proof, the Government has submitted competent evidence showing that the Claimant pled guilty to Count I of a December 30, 2004, indictment, charging her with violations of 18 U.S.C. § 1960(a)(b)(1)(B). That provision outlaws the operation of an unlicensed money transmitting business. The Government has therefore met its burden of showing by a preponderance of the evidence that the Claimant operated an illegal money transmitting business. Indeed, the Claimant does not dispute that she pled guilty to

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 9

that offense.

With respect to the second element of proof, the Government seeks to meet its burden by asserting that the Defendant Property was involved in her illegal money transmitting business, and that the Defendant Property cannot be wages that the Claimant made from any legitimate work she might have performed aboard the Dawn Princess. In support of these assertions, the Government points the Court to several pieces of competent evidence.

The most persuasive evidence provided by the Government is the hearing transcript of the Claimant's plea colloquy. During the plea colloquy, the Government recited the evidence it would present against the Claimant if the case proceeded to trial. Significantly, the Government stated that CBP officers had discovered the Defendant Property, among other effects related to the Claimant's illegal money transmitting business, in the Claimant's cabin. The Government further stated that the Claimant thereafter told the officers that she sent crew members' money to the Philippines. Finally, the Government stated:

> In fact, the contents of her room disclosed several money transactions from other ships to [the Claimant] to make these deposits, as well as the money that she had on hand in her cabin.

(Pl.'s Mot. for Summ J., Exh. K at 11.) The Court thereafter asked the Claimant whether she agreed that the Government could prove the facts as stated and whether those facts were true and

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 10

correct. Under oath, the Claimant responded in the affirmative.

In further support of its motion, the Government has submitted the Claimant's statement of wages from her employment aboard the Dawn Princess. That statement of wages indicates that the Claimant's net pay for the six-month period preceding her arrest was zero. The Government has also submitted a printout of an email message with the names of various individuals and corresponding amounts of money and dates. That email is intended to support the Government's assertion that, just days before her arrest, the Claimant received money from crew members to wire to the Philippines. That assertion is further buttressed by the signed declaration of an Immigration and Customs Enforcement special agent. That declaration states, in pertinent part, that the Claimant "received money from crew members to wire to the Philippines just days before she was arrested . . . ." (Hodge Decl. ¶ 13, Feb. 2, 2006.) Finally, the Government has provided a series of receipts of wire transfers. Those transfers indicate that over a certain period of time the Claimant wired various amounts of money, ranging from approximately $8,000 to approximately $17,000, from the United States to the Philippines.

The above evidence, even construed in a light most favorable to the Claimant, shows that it is more probably true than not true that the Defendant Property was involved in the Claimant's

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 11

illegal money transmitting business. *See*, *e.g.*, *United States v. $99,990.00 in United States Currency*, 69 Fed. Appx. 757, 762-63, (6th Cir. 2003) (unpublished) (finding that the government had demonstrated by a preponderance of the evidence that property was subject to forfeiture because of the large amount of cash the claimant had in his possession, coupled with the totality of the circumstances of the claimant's drug activity and the fact that the claimant's evidence of legitimate income did not sufficiently explain his possession of $99,900); *United States v. Thomas*, 913 F.2d 1111, 1115 (4th Cir. 1990) (finding that because undisputed cash expenditures vastly exceeded the defendant's legitimate income, the government had probable cause for forfeiture).

The Court thus finds that the Government has met its burden of showing by a preponderance of the evidence that the Defendant Property is subject to forfeiture. The burden now shifts to the Claimant to prove by a preponderance of the evidence that she is an innocent owner of the Defendant Property, as contemplated by 18 U.S.C. § 983(d). *United States v. 2003 Lamborghini Murcielago*, Civ. No. 07-726, 2007 U.S. Dist. LEXIS 89840, at *10 (M.D. Fla. Dec. 6, 2007). Because it is undisputed that the Claimant engaged in an illegal money transmitting business, the Claimant must show that there remains a genuine question of material fact about whether the Defendant Property is substantially connected

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 12

to her criminal offense. *See*, *e.g.*, *United States v. United States Currency in the Amount of Five Hundred Ninety-Eight Thousand Eight Hundred Twenty Six Dollars*, Civ. No. 00-7073, 2007 U.S. Dist. LEXIS 67938 (E.D.N.Y. Sept. 13, 2007) ("Having demonstrated a nexus between the defendant funds and illegal activity, the burden shifts to the claimant to demonstrate by a preponderance of the evidence that the funds are traceable to a legitimate source.").

The Court is at pains to discern in the Claimant's pleadings the basis upon which she seeks to meet her burden. The Claimant summarily disputes the Government's assertion that she received money from crew members days before her arrest. The Claimant also disputes the Government's well-documented arguments that the Defendant Property was involved in her illegal money transmitting business and that the Defendant Property could not be from her wages from her work on the Dawn Princess. The Claimant baldly states that the Defendant Property in fact came from cash that her employer paid her for her services in addition to cash gratuities from Dawn Princess guests. Those self-serving factual assertions do little to shed light on any legitimate origin of the Defendant Property. *See*, *e.g.*, *United States v. $21,510 in United States Currency*, 292 F. Supp. 2d 318, 322 (D.P.R. 2002) (reasoning that the "claimant's income from his construction business is at best a weak explanation for $31,750.00 in cash

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 13

found at his residence"); *United States v. Dusenbery*, 80 F. Supp. 2d 744, 754 (N.D. Ohio 1998) (holding that "the absence of legitimate income supports the finding of probable cause in a forfeiture action") (citing *United States v. Brock*, 747 F.2d 761, 763 (D.C. Cir. 1984)).  Moreover, the Claimant does not support any of her assertions with any competent evidence. *See*, *e.g. Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3rd Cir. 2005) ("To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue.") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *$21,510 in United States Currency*, 292 F. Supp. 2d at 322 (finding that the "claimant has failed to bring forth a genuine issue of material fact, as most of his assertions rely on self-serving documents that are not supported by competent evidence").

    Strangely, the Claimant attempts to support her position merely by attaching to her opposition many of the same exhibits the Government attached to its motion.  Significantly, the Claimant does not attempt to explain how any of those exhibits serve her cause.  In short, the Claimant has fallen fall short of showing by a preponderance of the evidence that the Defendant Property is not subject to forfeiture. *See*, *e.g.*, *United States v. 64,640.00 in United States Currency*, Civ. No. 06-586, 2007 U.S. Dist. LEXIS 39241, at *21 (D. Neb. May 30, 2007) (finding

*USA v. Twenty Thousand Three Hundred and Ninety Two Dollars in United States Currency*
Civil No. 2005-71
Memorandum Opinion
Page 14

that the claimant "has not shown by a preponderance of the evidence that he was an innocent owner of the subject currency [where] [t]he circumstances of his possession of the money remain completely unexplained").

## IV. CONCLUSION

For the reasons given above, the Court finds that the Government has proven by a preponderance of the evidence that the Defendant Property is subject to forfeiture. Accordingly, the Court will grant summary judgment in favor of the Government, and order that the Defendant Property be forfeited to the Government. An appropriate judgment follows.


**Dated: March 4, 2008**

S_____
    **CURTIS V. GÓMEZ**
       **Chief Judge**


copy:    Jocelyn Hewlitt, AUSA
           Thurston T. McKelvin, FPD